UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SPECIALIZED DATA SYSTEMS, INC.<br>317 Foxon Road, Suite 3B<br>East Haven, Connecticut  06513 | )<br>)<br>)<br>) | |
| *Plaintiff,* | )<br>) | |
| v. | )<br>) | Civil Action No. |
| ASSOCIATED SOFTWARE<br>CONSULTANTS, INC.<br>7251 Engle Road, Suite 400<br>Middleburg Heights, OH  44130 | )<br>)<br>)<br>)<br>) | April 11, 2018 |
| *Defendant.* | )<br>) | |

## **VERIFIED COMPLAINT**

**FACTS**:

1.  Specialized Data Systems, Inc. (hereinafter "SDS") is a Connecticut corporation.

2.  Associated Software Consultants, Inc. (hereinafter "ASC") is an Ohio corporation doing business in the State of Connecticut.

3.  ASC is a manufacturer of computer software for use specifically by the financial industry, and more specifically those lending institutions that need and use loan processing computer software.

4.  ASC produces, sells and markets loan origination and loan processing systems specifically tailored to lending institutions that issue mortgages and other similar secured loans under the brand name "PowerLender." ASC sells and distributes its PowerLender product directly to said banks and lending institutions and it also sells, markets and distributes PowerLender to various resellers, including SDS.

5.  For over twenty-five (25) years, ASC and SDS have been doing business together regarding the reselling by SDS of the PowerLender software, UNI-FORM software and related services.

6.  SDS packages PowerLender with its own proprietary product and sells, markets and services same to banks and other lending institutions under its solely owned trademark "RemoteLender."

7.  As part of the reseller arrangement between ASC and SDS, which has been in place for over twenty-five (25) years, as modified from time to time over all of these years, ASC agreed to provide support and other computer related services,

upgrades, patches, fixes and hosting of the RemoteLender product sold and serviced by SDS to the bank and lending institution customers and clients of SDS.

8. At all times, said banking and lending institution clients and customers, are and were the sole and direct customers and clients of SDS and ASC did not have any contractual relationship, directly or indirectly with them.

9. At all times, ASC was and is required to have PowerLender conform to any and all applicable banking laws and regulations, including those required under TILA-RESPA Integrated Disclosurerule (referred to as "TRID") " and at its own expense to support and service PowerLender accordingly.

10. At all times ASC had a fiduciary obligation to SDS and its bank and lending institution customers and clients due to the highly regulated banking and lending industry.

11. For approximately ten (10) years or more, ASC has breached its contractual duties, both written and oral, to SDS in failing to properly and timely support and service PowerLender, resulting in SDS having to incur great expense during this period of time to correct many issues with the PowerLender software that ASC failed to do.

12.     Following the financial crisis of 2008, and the implementation of "TRID" in October 2013 by Federal and State banking agencies, ASC neglected and failed to properly support, maintain and service PowerLender, to the detriment, harm and expense of SDS.

13.     ASC has stolen and is using and selling RemoteLender, the proprietary and trademarked product of SDS, without any permission from SDS.  It is engaging in statutory theft.

14.     ASC has and continues to engage in Unfair Trade Practices by overcharging and falsely charging SDS sums of money for the product, at prices never agreed to by SDS by falsely billing SDS then claiming that SDS is in breach of any contract it may have with ASC for the sole purpose of attempting to steal from SDS, its clients, or otherwise interfere with the contractual relationships that SDS has with its banking and lending institution customers and clients.

15.     ASC is engaged in the tortious interference with the contractual relationships that SDS has with its banking and lending institution customers and clients by directly communicating with them and disparaging SDS to its customers and clients and by cutting off its services to SDS thereby preventing SDS from servicing its customers and clients with which it has contractual obligations and relationships.

16. ASC has failed to provide to SDS the necessary upgrade to the I-Net Reporting System.

17., ASC has failed and neglected to support and upgrade the Lender Link module.

18. ASC has failed and neglected to support, upgrade, patch, or fix the software program for CUNA Life and Disability; a program that calculates life and disability payment for the customers and clients of SDS, resulting in customers and clients not being able to have this additional product for their use, resulting in a loss of goodwill and revenue.

19. ASC has failed and neglected to replace the JAVA applets required for necessary applications to run properly.

20. ASC has failed and neglected to support, upgrade the document preparation module, resulting in SDS having to develop and integrate a new system at considerable expense.

21. ASC has failed and neglected to upgrade the Lending Rules Foundation Module which serves as the basis for the SDS RemoteLender program, and to provide related documentation for same, resulting in SDS having to develop a documentation system at considerable expense.

22. ASC has failed and neglected to enhance and upgrade PowerLender to allow SDS to make changes to its customer and client systems on a global, rather than individual basis and has failed to provide SDS with a copy of an updated "Lending Rules Foundation" module process as agreed to, that would allow SDS to service its customers and clients needs as required by them.

23. ASC neglects and fails to provide an electronic signature interface and a Point of Sale module so SDS clients could support online loan applications, despite making representations to SDS and its customers and clients that it would do so. Indeed, SDS has at its own expense had to develop and support other products that were not made available by ASC and create this supplemental software product for its clients at its own expense in order to maintain its goodwill with its clients and to avoid any breach of contract with its clients.

24. ASC has failed and neglected to provide, as required of it, a pricing interface resulting in the loss of business, revenue, profits, new clients and at least three existing clients while also making SDS less competitive in the marketplace.

25. ASC failed and neglected to provide SDS with a compliant Qualified Mortgage Certificate and process for its banking clients and customers usage. ASC has

stolen or otherwise converted this proprietary product and intellectual property for its own use and sale. This represents statutory theft by ASC.

26. ASC neglects and fails to complete and provide SDS with the **Dovenmuehle** Mortgage, Inc. Loan Servicing Interface product in a timely and satisfactory manner for one of the major banking clients of SDS.

27. ASC has failed and neglected to provide SDS with documentation that meets industry standards and fails to provide support for new systems and more particularly on SDS credit union clients involving consumer loans. SDS is in jeopardy of losing this client due to this neglect and failure of ASC to meet its contractual and fiduciary obligations to provide same.

28. ASC staff and its officers have and continue to harass and bully SDS personnel on multiple occasions.

29. ASC had and continues to steal and convert the intellectual property and trade secrets of SDS that was developed to create a Commercial Lending System.

**LEGAL CLAIMS:**

**COUNT ONE:** **(BREACH OF CONTRACT)**

1-29. Paragraphs 1 through 29 are incorporated by reference hereon.

30. The aforesaid wrongful acts, failure to act and negligence constitute a breach of any and all written and oral contracts between ASC and SDS.

31. Said breach of contract has caused and continues to cause SDS to suffer irreparable harm, damages, loss of business, loss of clients and customers, goodwill and damage to its reputation.

**COUNT TWO:** **(BREACH OF FIDUCIARY DUTY)**

1-29 Paragraphs 1 through 29 are hereby incorporated by referenced herein.

30. The aforesaid wrongful acts are a breach of the fiduciary duty that ASC has to SDS due to its decades long relationship and reliance upon each other, which is more akin to a joint venture and is not an arm's length contractual relationship, and due to the statutes and regulations that so strictly govern the clients and customers of SDS, as for example, demonstrated by "TRID."

31. Said breach of its fiduciary obligations of ASC to SDS has caused and continues to cause SDS to suffer irreparable harm, damages, loss of business, loss of customers and clients, goodwill and damage to its reputation.

**COUNT THREE:**   **(STATUTORY THEFT)**

1-29.   Paragraphs 1 through 29 are incorporated by reference herein.

30.   The wrongful conduct, as aforesaid, of ASC, its officers, employees and agents, constitutes statutory theft in violation of C.G.S. §52-564.

31.   As a result of said wrongful conduct, SDS seeks treble damage in addition to compensatory damages and injunction relief.

**COUNT FOUR:**   **(CONVERSION)**

1-29.   Paragraphs 1 through 29 are incorporated by referenced herein.

30.   The aforesaid wrongful conduct of ASC, its officers, employees and agents constitutes conversion of personal and intellectual property.

31.   Said conversion has caused SDS to sustain damages.

**COUNT FIVE:**   **(TORTIOUS INTERFERENCE WITH CONTRACT)**

1-29.   Paragraphs 1 through 29 are incorporated by referenced herein.

30.   SDS has valuable, long-standing and ongoing business relationships and much goodwill with its bank and lending institution customers and clients.

31.   ASC, its officers, employees and agents have intentionally and tortuously interfered with the customer and client relationship of SDS to the detriment and damage

of SDS and also resulting in irreparable harm to SDS, including its reputation and goodwill with those customers and clients.

32. As a result of said tortious conduct by ASC, SDS has and will continue to suffer irreparable harm and damages for which compensatory and punitive damages and injunction relief is hereby sought.

### COUNT SIX: (VIOLATION OF CONNECTICUT UNIFORM TRADE SECRETS ACT, C.G.S. §35-50 ET. SEQ.)

1-29. Paragraphs 1 through 29 are incorporated by referenced herein.

30. The wrongful conduct, as aforesaid, of ASC, constitutes misappropriation of SDS trade secrets in violation of the Uniform Trade Secrets Act, C.G.S. §35-50 et. seq..

31. As a result of said wrongful conduct SDS seeks double damages in addition to compensatory damages and injunction relief.

THE PLAINTIFF,
SPECIALIZED DATA SYSTEMS, INC.

BY: _____
BARRY P. BELETSKY, ESQ.
RICCIO & BELETSKY, LLC
500 EAST MAIN STREET
SUITE 324
BRANFORD, CT 06405
TEL. 203-469-8080
FAX 203-433-4781
FED. JURIS # ct05313
Barry@riccio-beletsky.com

## **CERTIFICATION**

I hereby certify that on April 11, 2018, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
BARRY P. BELETSKY, ESQ.